**SO ORDERED.**

**SIGNED this 30 day of March, 2011.**



*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| TRAVIS R. BAIE and<br>LAURA G. BAIE, | 08-06795-8-SWH |
| DEBTORS | |
| | |
| TRAVIS R. BAIE and<br>LAURA G. BAIE, | ADVERSARY PROCEEDING NO. |
| Plaintiffs | 10-00252-8-SWH-AP |
| v. | |
| PRIME WEST MANAGEMENT RECOVERY,<br>LLC (A Delaware Corporation) and MR. VEGA, | |
| Defendants. | |

### ORDER FOR DEFAULT JUDGMENT

The matter before the court is the motion by the plaintiffs, debtors Travis and Laura Baie, for default judgment against Prime West Management Recovery, LLC. A hearing was held in Fayetteville, North Carolina, on January 6, 2011. At the conclusion of the hearing, the court invited counsel to submit a memorandum of law on damages, including attorney's fees.

**BACKGROUND**

Debtors Travis and Laura Baie (hereinafter "plaintiffs") filed a joint chapter 13 petition on October 1, 2008. Plaintiffs' chapter 13 plan was confirmed on April 1, 2009. This adversary proceeding was filed on September 28, 2010 against Prime West Management Recovery, LLC ("Prime West") and Mr. Vega (hereinafter collectively "defendants"). Prime West is a Delaware limited liability company engaged in debt collection.

The summons initiating this adversary proceeding was issued September 29, 2010 and the complaint was filed on October 4, 2010. The complaint alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (hereinafter "FDCPA") and the North Carolina Collection Agency Act, N.C. Gen. Stat. §58-70-90 *et seq.* (hereinafter "NCCAA"), both of which prohibit collection agencies from engaging in abusive, deceptive, and unfair practices. No responsive pleading was filed by the defendants. Default was entered against Prime West on November 24, 2010. On January 21, 2011, plaintiffs filed a Notice of Voluntary Dismissal with respect to Mr. Vega only.[1]

**FACTS**

The plaintiffs' complaint alleges that on July 15, 2010, an individual approached plaintiffs' residence, identified himself to Mr. Baie as an investigator for the Cumberland County Sheriff's Office, and stated that he was there to serve Ms. Baie with a lawsuit. Mr. Baie provided the alleged investigator with Ms. Baie's cell phone number and informed him of the pending chapter 13 case. This investigator, later identified as Mr. Vega with Prime West, called Ms. Baie and advised her that

---

[1] The incomplete designation of "Mr. Vega" and plaintiffs' inability to serve him created an obstacle to both the entry of default and entry of default judgment, which was overcome by the filing of a voluntary dismissal as to Mr. Vega.

2

he was an investigator with the Cumberland County Sheriff's Office and had a lawsuit to serve in regard to a debt owed to Providian. Providian is not a party to these pleadings. At this time, Ms. Baie advised Mr. Vega that she did not owe Providian any money, and that she and her husband had filed a chapter 13 case and were engaged in paying their debts through a confirmed chapter 13 plan.

Over the following two-month period, Ms. Baie received four more telephone calls from Mr. Vega. During one of those calls, he revealed his true identity as a debt collector for Prime West. Mr. Vega continued to demand payment and refused to respond to demands for authentication of the debt. Prime West finally conceded, on October 10, 2010 that no debt was owed. As a result of the in-person visit to her home and the harassing phone calls, Ms. Baie testified, she suffered emotional distress and was unable to function at work for three days. Additionally, the unfounded payment demands caused the Baies to engage in spousal arguments and accusations, and other domestic discord.

Mr. Bruce Allen represented the Baies in connection with the protection of their interests against the defendants' claims. His legal services included communicating with Prime West, making a written demand for authentication of the alleged debt to Prime West, and initiating this adversary proceeding. An affidavit of reasonable legal fees was submitted and contains a record of time spent prosecuting this adversary proceeding. The total legal fees are $10,040, representing 40.16 hours at $250 per hour.

## DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedure (made applicable in this adversary proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure) requires the court to

determine the amount of damages to award upon entry of a default judgment when no sum certain is alleged in the complaint. In light of entry of default against Prime West on November 24, 2010, this court must determine the appropriate amount of damages due to the plaintiffs.

**Damages Upon Default Under FDCPA**

The Fair Debt Collection Practices Act provides for a myriad of debtor protections and approved procedures by which a creditor may pursue a debt. For example, the creditor is procedurally limited in how it can procure debtor information under 15 U.S.C. § 1692b. The FDCPA provides that "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and further cites as violations the "use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader," and "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d.

In addition, the FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and provides a non-exhaustive list illustrating those representations, including the false representation that the collector is "affiliated with the United States or any State"; of the "character, amount, or legal status of any debt"; the "threat to take any action that cannot legally be taken or that is not intended to be taken"; the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"; and the failure to disclose in the initial oral communication that "the debt collector is attempting to collect a debt." 15 U.S.C. §§ 1692e(1), (2)(A), (5), (10) & (11). Finally, a debt collector may not use unfair or unconscionable means to

collect or attempt to collect any debt, and must provide validation of the debt within five days of initial communication.  15 U.S.C. §§ 1692f, 1692g.

Pursuant to 15 U.S.C. § 1692k, violations of the FDCPA trigger civil liability for statutory and actual damages. The statute reads in relevant part:

> (a) Amount of damages.  Except as otherwise provided by this section, any debt collector who fails to comply with any provision of [FDCPA] with respect to any person is liable to such person in an amount equal to the sum of–
>
> > (1) any actual damage sustained by such person as a result of such failure;
> >
> > (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $ 1,000;
>
> * * *
>
> (b) Factors considered by court.  In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors–
>
> > (1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and . . . the extent to which such noncompliance was intentional.

15 U.S.C. § 1692k.

According to the specific language of the FDCPA, statutory damages are limited to $1,000 per "action" rather than per specific instance of misconduct. See, e.g., Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 651 (6th Cir. 1994) ("Congress intended to limit 'other damages' to $1,000 per proceeding, not to $1,000 per violation."); Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 267 (D. Conn. 2005) (citing Wright and also noting there is "no prohibition in FDCPA against separate lawsuits for separate statutory violations of the FDCPA by the same defendant"). When statutory damages are determined pursuant to 15 U.S.C. § 1692k(a)(2), the court considers

evidence of the frequency and persistence of noncompliance of the debt collector, the nature of the noncompliance, and the extent to which the noncompliance was intentional. 15 U.S.C. § 1692k(b)(1).

In addition to statutory damages, an award of actual damages is proper when those damages are sustained by plaintiffs as a result of the debt collector's failure to comply with any provision of FDCPA. 15 U.S.C. § 1692k(a)(1). Damages have been awarded for emotional distress, anxiety, stress, irritability, sleeplessness, and fear of lost employment. See Nelson v. Equifax, 522 F. Supp. 2d 1222 (C.D. Cal. 2007); Perkons v. American, 2010 WL 4922916 (D. Ariz. 2010); Chiverton v. Federal Fin. Grp., 399 F. Supp. 2d 96 (D. Conn. 2005); In re Kirkbride, Case No. 08-00120-8-JRL (Bankr. E.D.N.C. 2010) (concluding that in addition to a large punitive damage award, additional damages of $200 per answered call and $10,000 for embarrassment were appropriate).

In this case, the threat of action by Prime West hung over the plaintiffs for months, beginning with Mr. Vega's visit to the plaintiffs' residence on July 15, 2010. Over the next eight weeks, harassing telephone calls by Mr. Vega on behalf of Prime West were made to the plaintiffs and requests to authenticate the purported debt went unanswered. Ms. Baie testified that both she and her husband were under elevated stress and emotionally upset. In addition, she missed a total of three days of work while dealing with Prime West's misconduct. Considering the totality of the circumstances, the court finds Prime West liable to plaintiffs for federal statutory damages of $1,000, in addition to actual damages in the amount of $10,000 for lost wages, embarrassment, and emotional distress.

**Damages Upon Default Under NCCAA**

Damages under the FDCPA do not preclude damages under relevant state law. The FDCPA provides:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, *a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.*

15 U.S.C. § 1692n (emphasis added). When state law affords greater protection, it is not inconsistent to recover both statutory and actual damages under the FDCPA, as well as an additional statutory award under state law. Miele v. Sid Bailey, Inc., 192 B.R. 611 (S.D.N.Y. 1996) (awarding damages under FDCPA and state tort law against debt collector who attempted to collect discharged debt).

North Carolina indeed provides further protection from deceptive representations by collection agencies in the NCCAA, codified in Chapter 58, Article 70 of the North Carolina General Statutes. In relevant part, the statute states:

> No collection agency shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following:
>
> (1) Communicating with the consumer other than in the name of the person making the communication, the collection agency and the person or business on whose behalf the collection agency is acting or to whom the debt is owed;
>
> (2) Failing to disclose in the initial . . . oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in

7

>   subsequent communications that the communication is from a debt collector . . . ;
>
>   * * *
>
>   (7) Falsely representing the status or true nature of the services rendered by the collection agency or its business.

N.C. Gen. Stat. § 58-70-110 (2009).  A violation of the statute triggers civil liability damages permitting the assessment of actual damages and makes the debt collector "liable to the debtor for a penalty in such amount as the court may allow which shall not be less than five hundred dollars ($500.00) for each violation nor greater than four thousand dollars ($4,000) for each violation." N.C. Gen. Stat. § 58-70-130 (2009).

In the case at bar, Mr. Vega's conduct (on behalf of Prime West) on five separate occasions (one in-person visit plus four telephone calls) constitutes five separate violations of the state statute. The court finds Mr. Vega's conduct sufficiently egregious to justify an award of a $2,000 penalty per violation pursuant to N.C. Gen. Stat. § 58-70-130, for a total of $10,000.  See Kirkbride, Case No. 08-00120-8-JRL.

**Attorney's Fees**

Finally, 15 U.S.C. §1692k(a)(3) provides that "in the case of any successful action to enforce [FDCPA] liability, the costs of the action, together with a reasonable attorney's fee as determined by the court" are recoverable. Mr. Allen's services and rate are reasonable and will be allowed in the amount of $10,040 as set forth in his affidavit.

## **CONCLUSION**

For the reasons set out above, plaintiffs are granted federal and state damages in the cumulative amount of $21,000, plus attorney's fees in the amount of $10,040. A separate judgment will be entered accordingly.

**SO ORDERED.**

**END OF DOCUMENT**